# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-2123

_____

United States of America

*Plaintiff - Appellee*

v.

Daniel Hess

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: April 13, 2018
Filed: July 19, 2018
[Unpublished]

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

PER CURIAM.

Daniel Hess pleaded guilty to assault with intent to commit murder, a violation of 18 U.S.C. §§ 113(a)(1), 1152, and 2, and assault resulting in serious bodily injury, a violation of 18 U.S.C. §§ 113(a)(6), 1152, and 2. His advisory sentencing range under the U.S. Sentencing Guidelines Manual (Guidelines) was 151 to 188 months'

imprisonment. The district court[1] varied upward and sentenced Hess to 360 months' imprisonment. Hess argues that his sentence is substantively unreasonable.

We review the substantive reasonableness of a sentence under an abuse of discretion standard, "tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Gall v. United States, 552 U.S. 38, 51 (2007). If the district court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. at 50. We may not apply a presumption of unreasonableness to a sentence outside the Guidelines range, but we may consider the extent of any deviation. Id. at 51. Our review of the substantive reasonableness of a variance is narrow and deferential, for we must give "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id.

We conclude that the district court's justification for imposing a 360-month sentence was sufficiently compelling to support the upward variance. The court's decision to vary upward was based largely on the brutality and depravity of Hess's relevant conduct, as set forth in the factual basis of his plea agreement.

According to the plea agreement, Pauline Little lived with her adult son, Donald Little, Jr., near Porcupine, South Dakota. In early October 2015, Pauline received more than $100,000 in proceeds from a life insurance policy. Hess and his wife, Phyllis Lucero, were acquainted with the Littles and knew about the insurance proceeds. Believing that $5,000 to $10,000 in cash was kept in the Pauline's home, Hess, Lucero, and accomplice Seth Hernandez decided to rob them.

---

[1] The Honorable Jeffrey L. Viken, Chief Judge, United States District Court for the District of South Dakota.

On October 17, 2015, the three donned masks and broke into Pauline's home. Hess and Hernandez went to Donald's downstairs bedroom, where they assaulted him. Hess strangled Donald until he was unconscious. When Pauline heard Donald fighting "for dear life," she left her bedroom and encountered a masked Lucero. The two women fought, with Lucero eventually overcoming Pauline and dragging her into a bedroom. Hess, Lucero, and Hernandez went into and out of Pauline's home, as they searched for money and things of value. Pauline felt a powerful kick to her right ribs and heard Hess say, "She's dead let's go. Grab that shit, let's get out of here." The three then left in Pauline's new pickup truck.

Hess returned to Pauline's home later that evening. He tied up Pauline and Donald and poured carpet cleaner on them, believing it would remove any fingerprints he may have left. Upon regaining consciousness, Donald freed himself from the duct tape and electrical cord that restrained him and went upstairs, where he discovered his mother on the couch, badly beaten and bound in duct tape.

Upon being apprehended, Hess admitted that he intended to break into the Pauline's home, assault Pauline and Donald, and steal Pauline's cash. He also admitted that he stole and discarded a television and that he had burned his shoes in an attempt to destroy evidence.

Pauline and Donald suffered significant head injuries, including brain bleeds, bruises, and lacerations. Pauline suffered broken ribs and bruising all over her body. The lacerations on her head required seventeen staples. Donald's ears, abdomen, and arms were bruised. He suffered acute subdural hematoma, and his right orbital bone and right nasal bone were fractured. The district court described photographs of Pauline and Donald as horrific, with the victims "look[ing] like they should be in a funeral home."

-3-

Donald was diagnosed with anxiety, depression, and post-traumatic stress disorder after the assault. He drank heavily and eventually sought inpatient alcohol treatment. Pauline succumbed to cancer approximately a year after the assault.

Donald testified at sentencing that the beating destroyed his family. He explained that when he awoke "in the basement tied up, blood all over the place," his only concern was for his mother, whom he found "laying there on the couch, face all cut up, just moaning." Donald lives with that image of his mother, "bleeding from her forehead, her shirt ripped. You can see where they kicked her . . . and she managed to crawl by herself into the living room and on the couch." Donald testified that Pauline gave up her will to live after the assault, despite his efforts to take care of her. The Littles no longer felt safe in their home and eventually moved in with Pauline's sister. Donald testified that he regularly sees a psychiatrist to help him deal with the trauma. He explained that he suffered neck injuries during the assault that cause his arms and hands to go numb and that he had decided to forego the multiple surgeries that would be required to address the injuries.

The nature and the circumstances of the offense weighed heavily in the district court's decision to sentence Hess to 360 months' imprisonment. The court found that Hess's conduct was "highly intentional, planned behavior," not the drug-induced behavior Hess claimed it to be. The district court described the circumstances of Hess's "unmitigated and vicious attack on Mr. Little and his mother" as "extraordinarily severe" and "tantamount to torture." The court found Hess's actions upon his return to Pauline's home especially troubling, noting that despite Pauline and Donald's "terrible physical condition" and "life threatening injuries[,] . . . they were bound and [Hess] poured carpet cleaner on them."

Hess argues that the district court failed to consider mitigating aspects of his personal history and characteristics under 18 U.S.C. § 3553(a)(1). Specifically, Hess claims that the district court failed to consider that he had had a troubled childhood

that resulted in drug addiction, anger-management issues, and health problems, including three or four serious head injuries. Hess also argues that the court should have given weight to the fact that he has raised four biological children and four step-children, all of whom are living "positive, pro-social lives." He argues that since his incarceration and his becoming sober, he has demonstrated good character and that his convictions were a violent aberration of an otherwise nonviolent history.

The district court considered those mitigating factors, which were set forth in Hess's presentence report, in his letter to the court, in letters written by those who support him, and in defense counsel's argument at sentencing. The district court did not abuse its discretion in deciding that a significant upward variance was required to address the brutal nature and circumstances of the offense, as well as the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence to criminal conduct. See United States v. Wisecarver, 644 F.3d 764, 774 (8th Cir. 2011) ("The district court's choice to assign relatively greater weight to the nature and circumstances of the offense than to the mitigating personal characteristics of the defendant is well within the 'wide latitude [given] to individual district court judges in weighing relevant factors.'" (alteration in original) (quoting United States v. Foy, 617 F.3d 1029, 1037 (8th Cir. 2010))).

The sentence is affirmed.

_____